Mr. Justice CAMPBELL
 

 delivered the opinion of the court.
 

 This controversy originated in a contract between the appellant's and the appellee, (Vallette,) in which the-latter agreed to complete that portion of the canal through the valley of White Water river that lies between the cities'of Laurel and'Cambridge, in Indiana..
 

 In the year 1836, the State of Indiana projected the improve
 
 *420
 
 ment of which this is a part, and prosecuted the work until 1842, at an expenditure cf moré than one million of dollars. In that year the appellants were incorporated, and the State surrendered the unfinished work to them, investing them with powers to continue.it till its, completion. In 1844 this corporation became embarrassed in their affairs, and were unable to negotiate loans upon the pledge, of their property. Their resources were inadequate to the demands of their enterprise, and there was fear that it would be abandoned, or at least inconveniently postponed. In July, 1844, the president of the company applied to the appellee (Vallette) for assistance, and the result of their negotiation was, that the latter submitted a proposal to the company to supply materials and to complete at his expense the canal, according to the plan of the chief engineer, by the 1st of September, 1845, for one hundred and twenty-five bonds-of the company, of |1,000 each, upon ten years’ time, drawing, interest at' seven per cent, per annum, payable semi-annually, he (Vallette) to pay in the paper of the company $500 as a bonus.
 

 This proposal was accepted, and a detailed contract was drawn out and executed, embracing some modifications not material to this dispute. The appellee agreed to construct in a' substantial and workmanlike, manner the sections of the canal, under the directions of the chief engineer, and according to particular specifications. The engineer was to. decide whether the work had been performed agreeably to contract and the instructions of the engineer; and payment was to be made upon his certificate of the work done at the end of every sixty days. The contract was punctually performed by the appellee to the satisfaction of the company, and úpon a final settlement one hundred and sixteen bonds of $1,000 each wereissued to' him, one hundred and twelve bearing date the 1st of February, 1845, with interest at the rate of seven per cent, per annum, payable semi-annually.at New York, the principal to be paid at ten years, from date. ■ These bonds contain recitals- and stipulations as follows: That the principal sum is -the first and only loan created by the company under their charter for the completion of the canal; that the faith of the company and'
 
 *421
 
 their effects, real and personal, are pledged for the payment of the debt and interest; that these bonds shall have a preference over all debts to-be thereafter contracted; that in default of' the payment ‘of interest, the holder of the bonds might enter into possession of the tolls, water rents, and other incomes of the’ company; and might apply to any court of the State (Federal or State) for the appointment of a receiver, and that the company would not appeal to any other court; that they would pay ten per cent, as liquidated damages on the amount of the interest thus collected. The interest on these bonds was paid until August, 1854, since when the corporation has been in default.
 

 The appellees hold the one hundred and twelve bonds above described, and have filed this bill to enforce the covenants they contain by the appointment of a receiver. They allege that the company is insolvent; that its stock has no value, and that the canal is exposed to dilapidation and ruin, and they have no -ability to remedy such disasters.
 

 The defendants resist the demand of the appellees. They aver that the president of the company applied to Yallette for a loan of money; that Yallette was willing to advance the sum required, if he could make a profit of one hundred per cent., . and the president and directors were ready to concede this profit. That the.contract was made between them as a device and contrivance to evade the laws .of Indiana upon the subject, of interest and usury, and that,the contract'between the par- ' ties in its essence and spirit was a loan of money at that exorbitant and usurious rate of interest. That the work was done by the company through the superintendence of their engineer, and that Yallette paid out the money fó cok tractors merely to secure its appropriation to- the improvement of the canal to strengthen his security. That the'amount expended was but $56,000, and the estimates of the engineer prior to the making of the contract did not exceed $65,000 ; and that the contract was arranged so that the profit of one hundred per.cent, might be réalized.
 

 They complain that the exactions of the appellee were exorbitant and oppressive. That the. canal -has been exposed to
 
 *422
 
 disasters from heavy floods, and- a debt has been created for reparations and improvements that is superior _n dignity and merit to that of the appellee, and that he had waived his preference to induce-them to make the advance.
 

 In the absence of objections to the validity o.f these bonds, there can be no question concerning their legal operation and effect, or of the jurisdiction of a court of equity to enforce them. That court treats an agreement for a mortgage or pledge of bonds, or other, property, as binding, and will give it effect according to the intention of the contracting parties. (Duncan
 
 v.
 
 The Company of Proprietors of the Manchester Water Works, 8 Pri., 697; Fector
 
 v.
 
 Philpott, 12 Pri., 197; Seymour
 
 v.
 
 Canandaigua and N. F. R. R. Co., 25 Barb., 284.)
 

 In Fripp
 
 v.
 
 Chard Railway Company, (21 Law and Eq., 53,) the Vice Chancellor decided that the court of chancery might appoint a receiver of the property of a corporation created by act of Parliament in favor of a mortgagee, although by the act a committee was constituted to whom all the powers of management were referred. And at the present term of this court a receiver for the tolls of a bridge erected by a corporation in Indiana was allowed by this court in favor of a judgment creditor, whose legal remedy had been exhausted. (Covington Drawbridge Company
 
 v.
 
 Shepherd, 21 How.)
 

 " The question then arises, whether the contract between these parties, as disclosed by the pleadings and proofs, is valid. It is essential to the nature of usury ‘in Indiana, that .a certain gain exceeding the legal rate of interest should accrue to the lender as a consideration for the loan. Where there is no loan there can be no: usury. (State Bank
 
 v.
 
 Coquillard, 6 Ind., 232.)
 

 And where there is a loan, although the profit derived to the lender exceeds the legal rate, yet if that profit is contingent or uncertain, the contract, if
 
 bona fide
 
 and without any design to evade the statute, is not usurious. (Cross
 
 v.
 
 Hepner, 7 Ind., 357.)
 

 The testimony does not support the averment of the answer, that this contract involved a device or contrivance to elude the prohibition of the statute. The president of the corporation (Mr. Helm), testifies: “ I know nothing of any such device or
 
 *423
 
 arrangement; I thought it was all right; and there was none, so far as I know or believe, to evade the usury laws of Indiana; nor was there any device or arrangement to cover up a loan of money from Vallette to said company, as I know of no such loan.” The testimony of the' solicitor of the corporation, (Mr. Parker,) who superintended all the negotiations, and drew the papers, is equally explicit. He says: “I am satisfied there was no device or management had or intended between said Vallette and the canal ccmpany, in the matter of this contract or otherwise, whatever, in this connection, to avoid any usury laws of the State of Indiana, or any other State. . I never thought of such a thing myself, and never had an intimation of it from any other source; and had there been anything of the kind, I would certainly have known it, as I have said the whole matter in every shape it assumed was presented to me for my consideration. Vallette had all the risk of his contract on his own hands, until completed and taken off his hands by the company. And I have a strong impression in my own mind, that in one if not more instances he suffered by that risk in consequence of damage done his work, while in progress, by high waters.”’ In the absence of simulation in the contract, the reason assigned in the last sentences quoted from the testimony of this witness is conclusive on the question of the usury. These witnesses are sustained by their fellow-members of the board. The recital in the bonds, that this was a loan, is explained by the fact that the form of the bonds was settled after the work was finished, and with reference to their negotiability in New York, and the contract was regarded with favor by the corporation, and the payment of interest was made without exception for several years. It is admitted that the 'contract provided prices for the work done far exceeding the cash estimates of the engineér. This, the witnesses say, was the natural consequence of the embarrassment of the company and •their want of credit. But they prove that the proposal of Vallette was understood and considerately examined; that it was adopted by the board, with only one dissentient vote; that its conditions’ were performed in good faith by. the appellee, and that the final settlement between the contracting parties was
 
 *424
 
 amicable. There was. on the part of the appellee no fraud or circumvention.
 

 These facts oppose an insuperable bar to any relief from the contract on the ground of lesion or oppression. (Harrison
 
 v.
 
 Guest, 35 Law and Eq., 487.)
 

 The remaining question for consideration is, whether it was competent for this corporation to execute such securities as' . these bonds in fulfilment of their covenants in a construction contract, fairly made • and executed by the other party. ' The first section of the act of incorporation endows the corporate body with faculties for suits,, contráete, and áll other things legitimate for such company to 'do; and “ all the powers and privileges in any wise'necessary and expedient to carry into effect the proper business ” of the .association. The seventeenth section establishes the' president and directors as the governing body, and that “their regular and efficient doings not inconsistent with this charter” “shall in all cases.be deemed the doings of the company, and forever held-valid as such.”
 

 The. 18th section invests them with “full power to negotiate any loans that may be deemed expedient for carrying out all the objects contemplated by this act; and for the payment of such loans, agreeably to the terms agreed upon, said company ' shall bind themselves by their bonds, which bonds,” &c., &c., ' &c., “ shall be a valid lien upon all the stock and effects of said company in the order of their issue, and all the effects of the company, both real and personal, shall be deemed and taken as a pledge for the punctual payment of the interest on said bonds, .and the ultimate redemption of the principal, agreeably to contract.
 

 It is well settled that a. corporation, without special authority, may dispose of land, goods, and chattels, or of any interest in the samé, as it deems expedient, and in the course of their legitimate business may ¿make a bond, mortgage, note, or draft; and also may make Compositions with creditors, or an assignment for their benefit, with preferences, except when restrained by law. (Partridge
 
 v.
 
 Badger, 25 Barb., 146; Barry
 
 v.
 
 Merchants’ Ex. Co., 1 Sand. Ch. R., 280; Burr
 
 v.
 
 Phœnix Glass Co , 14 Barb., 358; Dater
 
 v.
 
 Bank of the U. S., 5 W. and
 
 *425
 
 S., 223; Frazier
 
 v.
 
 Wilcox, 4 Rob., 517; U. S. Bank
 
 v.
 
 Huth, 4 B. M., 423; The State
 
 v.
 
 Bank of Md., 6 G. and J., 323; Pierce
 
 v.
 
 Emery, 32 N. H., 486.)
 

 But,-in .addition to the general powers of the corporation, in this instance there is
 
 “full power”
 
 (specially conferred) tonego-' tiate any loan or loans that the company might deem expedient for carrying out any or all of the objects of the act. We should find great difficulty in deciding that the corporation was restrained by the laws concerning interest and usury, in view-of the comprehensive language of the 18th section of the act. Those laws rest' upon considerations of policy applicable, for the most part, to individuals engaged in their ordinary business; and the Legislature might well conclude that a-numerous body, engaged in a public enterprise, under the direction of an intelligent board, might-be trusted with a plenary control of their property or credit, to' accomplish the aim of the association.
 

 If the rights of the appellees depended upon the act of incorporation alone, it would be difficult to resist them. But, in January, 1845, the Legislature of Indiana passed an act, that recites the'corporation had entered into a contract with Val lette to complete the canal, and was to be paid in their bonds, drawing the legal interest in New York, and-doubts were entertained as to the legality of the issue of these bonds ;• and thereupon it was enacted, that all the bonds which might be issued in accordance with the contract existing between the company and Yallette were
 
 legalized.
 
 A large portion of the work specified in the contract was performed after this enactment, and the settlement under which these bonds were issued took place subsequently. This act implies that there was no illegality in the fact that bonds were employed as a medium of payment for supplies of materials for, or work and labor done upon, the canal.
 

 The objection that a contract is illegal, and that no judgment can therefore be rendered upon it, is not allowed from any con- - sideratiom of favor to those who allege it. Tho courts, from . public considerations, refuse their aid to enforce obligations which contravene-, the laws of policy of the State. "When the
 
 *426
 
 Legislature relieves a contract from the imputation, of illegality neither of the parties to the contract are in a condition to insist on this objection. (Andrews
 
 v.
 
 Russell, 7 Black., 475; 8 Ind., 27.)
 

 Upon a review of the whole ease, it is the opinion. of the court that the contract between these parties was. made withoutfraud or surprise; that there is no illegality in the cause, ór consideration; that the priority of payment has not been released or defeated; and that the relief sought is within the competency of a court of equity to allow.
 

 Decree affirmed.