THE STATE *ex rel.* HEMAN, *Appellant*, v. FLAD *et al.*

### DIVISION ONE.

1. **Mandamus.** *Mandamus* will not lie to control the discretion of a tribunal acting in a judicial capacity or direct it to render a particular judgment.

2. ———. Such writ cannot be made to perform the office of an appeal or a writ of error.

3. ———: MUNICIPAL BOARD : ALLOWANCE OF CLAIMS. An act of the legislature of March 31, 1887, section 1, empowered the board of public improvements of the city of St. Louis " to examine and allow the claim of any person against such city for materials furnished and labor done for any public work, improvement or repairs for such city in pursuance of a contract with the city." Section 5 provides that if such board fail or refuse to pass on any such claim within a reasonable time after the presentation thereof it may be compelled by writ of *mandamus* to perform such duty. *Held,* that, where a claim was presented to the board and was examined by it and part of it allowed, the circuit court had no power to review such action by *mandamus,* the jurisdiction being limited to cases where the board refused to act.

*Appeal from St. Louis City Circuit Court.*

AFFIRMED.

*T. J. Rowe* for appellant.

( 1 ) The legislature undoubtedly has the right to say that relief can be had by *mandamus* in a given case, although such right did not exist before the passage of the act. Such are inherent legislative powers, and their exercise is not forbidden by the constitution. The legislature has seen fit to declare that respondents can be compelled by *mandamus* to pass on a certain class of claims in a certain manner. *State v. Jackson*, 105 Mo. 196. ( 2 ) Independent of legislative enactment *mandamus* is the proper remedy. *Bean v. County Court*, 33 Mo. 644 ; *Sheridan v. Fleming*, 93 Mo. 323. ( 3 ) " It is settled that a subsequent ratification by the state of a contract made by one of its own agencies is equivalent to a previous authorization." *State ex rel. v. Miller*, 66 Mo. 342.

*W. C. Marshall* for respondents.

( 1 ) The act of March 31, 1887, vests a discretion in the board of public improvements to hear and determine claims, and allow such as the board found were just and equitable. The courts of this state have

no jurisdiction to compel the board of public improvements to render any particular finding, or to allow any particular claim. *Mandamus* only lies to compel a tribunal acting in a judicial capacity to take some action, but not to direct what particular judgment shall be rendered. *State v. Governor*, 39 Mo. 388; *Railroad v. Governor*, 23 Mo. 353; *State v. County Court*, 41 Mo. 221; *State v. County Court*, 41 Mo. 247; *Trainor v. Porter*, 45 Mo. 336; *State v. Wilson*, 49 Mo. 146; *State ex rel. v. Francis*, 95 Mo. 44; Mechem on Offices, secs. 945 6-7. Where the inferior tribunal is vested with a discretion, such discretion cannot be controlled by *mandamus*. *State ex rel. v. Engelman*, 86 Mo. 551; *State ex rel. v. Megown*, 89 Mo. 156; *Strahan v. County Court*, 65 Mo. 644; *State v. Gregory*, 83 Mo. 136. (2) The acts of March 31, 1887, and May 11, 1889, are unconstitutional. They violate section 15 of article 2 of the constitution, section 19 of article 12 of the constitution, and section 48 of article 4 of the constitution. It appears from the averments of the alternative writ that relator received his tax bills about the twenty-third of November, 1885. At that time it was the decided law in this state that the city of St. Louis was not liable for work which under the contract was to be paid for by special tax bills, although the bills could not be collected by the contractor owing to defective legislation authorizing the work to be done. *Saxton v. St. Joseph*, 60 Mo. 153; *Carroll v. St. Louis*, 4 Mo. App. 191; *Keating v. Kansas City*, 84 Mo. 415; *Perkinson v. City*, 4 Mo. App. 322; *Thrush v. City*, 21 Mo. App. 394.

BRACE, J.—This is an appeal from the judgment of the St. Louis circuit court sustaining a demurrer to the alternative writ of *mandamus* issued herein, and refusing the peremptory writ prayed for. The defendants are the board of public improvements of the city of St. Louis.

It appears from the alternative writ that by ordinance 13,237, approved March 21, 1885, the Brooklyn street sewer district number 1 was established, and by ordinance 13,238 the board of public improvements was directed to cause district sewers to be constructed therein; that on the twenty-fourth of April, 1885, relator entered into a contract with the city to do said work; that the work was done and completed and the relator received special tax bills therefor on or about November 23, 1885, in the manner provided for the payment of such work by section 2 of said ordinance 13,238, and in accordance with section 24 of article 6 of the charter of the city of St. Louis, which particularly prescribes that after the tax bills for such work have been made out by the president of the board of public improvements, and by him registered in his office in full, they shall be certified and delivered to the comptroller, and his receipt taken therefor, and by him registered and countersigned and delivered to the party in whose favor they are issued, "and his receipt taken in full for all claims against the city on account of said work."

Relator failed to collect such tax bills under a decision of the St. Louis court of appeals, on the ground that they were invalid because the district sewers connected with a private sewer and not with a public sewer.

Thereafter, on the thirty-first of March, 1887, the legislature passed an act to authorize the board of public improvements of any city in this state to audit and allow claims against such city for work done and materials furnished on any street or highway under a contract with such city, and directing said board not to be influenced or governed by any technical error committed by the law-making power, agent or officer of such city, but to allow and certify such claims as such board determined were just and equitable. (This act will be found on pages 32 and 33, Session Acts, 1887, and an act amendatory thereof on page 29, Session Acts, 1889.)

Thereafter, about the sixth of March, 1888, relator presented a petition to the board of public improvements, asking such board to audit and allow against the city a claim for $3,226.60, the amount of such tax bills adjudged invalid by the court of appeals.

The board of public improvements considered such claim and allowed $1,242.93 thereof, and refused to allow $1,721.75, the amount of three tax bills issued against Frederick Heman, on the ground that the board believed that the relator, August Heman, was interested in the property against which such special tax bills were issued, and which property had received the full benefit of the work done. Thereupon relator instituted this proceeding by *mandamus.*

Defendants interposed a demurrer to the alternative writ of *mandamus* alleging the following grounds: *First.* The plaintiff is not under the allegations contained in said writ entitled to relief by *mandamus* nor to any relief in the premises. *Second.* The alternative writ does not state facts sufficient to constitute a cause of action. *Third.* The acts of the legislature approved March 31, 1887, and May 11, 1889, referred to in said writ, are each and both of them invalid and unconstitutional.

The provisions of the law of 1887, upon which the plaintiff bases his claims for the relief sought, are as follows: "Sec. 1. It shall be lawful for the board of public improvements of any city in this state, where such board exists, to examine and allow the claim of any person against such city, for materials furnished and labor done for any public work, improvement or repairs for such city, in pursuance of a contract with such city.

"Sec. 2. In passing upon such claim the board of public improvements shall not be influenced or governed by any technical error committed by the law-making power, agent or officer of such city, but shall carefully examine the character of such claim, and if they find

that it is based on a contract with such city, and that the work done and materials furnished were in accordance with such contract, and that the same was accepted by such city, and that the claim was just and equitable, they shall report these facts to the mayor and comptroller of such city, accompanied with a statement, showing the amount found to be due by the city in such claim, which shall not exceed the face value of the tax bill.

"Sec. 3. It shall be lawful and shall be the duty of the mayor of such city, upon receiving the report of the board of public improvements, in any claim submitted to them under the provisions of this act to send a communication to each house of its municipal assembly (if there be more than one) fully setting forth the character of the claim, and shall at the same time transmit a copy of the report of the board of public improvements on such claim.

"Sec. 4. It shall be lawful, and it shall be the duty of the municipal assembly and other proper officers of such city, to pass an ordinance appropriating an amount equal to that found due on such claim by the board of public improvements in favor of the persons holding such claim, and the acceptance by such persons of the sum so appropriated shall be in full for such claim and the city released therefrom forever.

"Sec. 5. Any officer, board or municipal assembly of any city in this state refusing or failing to pass on any claim presented under this act, or refusing or failing to pass on such claims in the manner provided by this act, and within a reasonable time after such claim is presented, may be compelled, by writ of *mandamus*, to perform such duty, and the circuit court of the judicial district where such city is located shall hear and determine the same according to the equities of the case."

The evident purpose of this act was to confer power upon a city to appropriate money in payment for work

and labor done, and materials furnished, under a contract with the city, when in equity and good conscience the city ought to pay for such work, labor and materials, although no recovery could be had on the contract or on a tax bill issued in pursuance thereof. At the time of its adoption there was no principle of the law better settled in this state than that *mandamus* would not lie to control the discretion of a tribunal acting in a judicial capacity, or direct a particular judgment to be rendered by such tribunal; and that such writ could not be made to perform the office of an appeal or writ of error. *State ex rel. Spickerman v. Allen*, 92 Mo. 20; *State ex rel. Betts v. Megown*, 89 Mo. 156; *State ex rel. Phelan v. Engelmann*, 86 Mo. 551; *State ex rel. Granville v. Gregory*, 83 Mo. 123; *Strahan v. County Court*, 65 Mo. 644; *State ex rel. Sparks v. Wilson*, 49 Mo. 146; *Trainer v. Porter*, 45 Mo. 336.

The statute under consideration must be construed in the light of this well-settled principle. To effectuate the purpose of the act, the board of public improvements is invested with power to examine and allow claims of the character mentioned, and, in passing upon such claim, it is made their duty not to be governed or influenced by "any technical error committed by the law-making power, agent or officer of such city; but if upon investigation they shall find that the claim is based upon a contract with the city, that the work and materials were furnished and accepted by the city in accordance with such contract, and that *the claim is just and equitable*, they shall report," etc. In order to secure the performance by the board of these duties of an eminently judicial character, power is vested in the circuit court, in case of its refusal or neglect to discharge these duties, to compel their performance by *mandamus;* that is, to compel the board to proceed with the examination and to make report "according to the equities of the case," disregarding the technical errors specified. But it was certainly not the intention of the legistature

that the circuit court should in this proceeding by *mandamus* exercise appellate power to review the findings of the board and compel such judgment as to it might seem just and right. To so construe the statute would be an utter perversion of the character of the process by *mandamus*, permitting it to usurp the functions of an appeal or a writ of error, and such a use of it could not have been within the meaning of the legislature.

In the case at hand it appears upon the face of the petition, that the plaintiff's claim was examined and passed upon by the board of public improvements in the manner provided by law ; that they allowed a part of it and disallowed a part of it, reporting the amount found to be due by the city. They allowed a part of it, because they found it was a claim such as was contemplated by the statute, and that the part allowed was "just and equitable ;" they disallowed the remainder because, in their judgment, it was not "just and equitable."

The circuit court has no power by *mandamus* to review either finding. The finding in both instances was a judicial determination of a matter within the judicial discretion of the board, which could not be constrained by the circuit court. The circuit court, in case the board had refused to act, could have compelled them to act. It could have required them to proceed and render judgment according " to the equities of the case ;" but it could not determine for them the equities of the case, and require them to so adjudge.

The peremptory writ was properly denied, and the case being disposed of on this ground, it becomes unnecessary to discuss the constitutionality of the statute in question upon which we do not pass. The judgment of the circuit court is affirmed. All concur.