# Davis Bros. v. Montgomery Furnace & Chemical Co.*

*Garnishment Suit.*

| | |
|---|---|
| 101 | 127, |
| 102 | 654, |
| 101 | 127 |
| 119 | 276 |
| 101 | 127 |
| 123 | 375 |

1. *Ratification by corporation of acts by its promoters.*—A corporation, after its organization, has the power to accept and ratify the agreements and covenants of its promoters, made to effect or carry out the purposes of its organization, and, when accepted and ratified, such agreements and covenants are mutually binding.

2. *Issue of stock by corporation; when presumed to be legal.*—When it is shown that all the capital stock of a corporation has been subscribed and paid for in full, and there is no evidence as to the value of the consideration paid for said stock, it will be presumed that it was adequate, and a court can not declare the issue of such stock fictitious or violative of Article XIV, § 6 of the Constitution, or of section 1662 of the Code of 1886.

3. *Subscribers to corporate bonds; when not liable as stockholders.*—When stock, which has been subscribed, paid for and issued, upon adequate consideration, is by the holders thereof placed in the hands of a trustee to be paid over to subscribers for bonds of the corporation, when their subscriptions to such bonds are paid in full, such stock, so delivered to the trustee, may be transferred by him to the subscribers for bonds, upon payment of their subscriptions, without contravening the Constitution and statutes of the State, (Const. Art. XIV, § 6; Code, § 1662); and the failure to pay their subscriptions for the bonds, does not make such subscribers for said bonds liable upon the stock agreed to be delivered, as upon unpaid subscription for stock.

4. *Subscribers to bonds of a corporation; liable as garnishees.*—Where the contract of subscription to bonds of a corporation provides that upon the payment of the entire amount of the subscription an equal amount of fully paid-up stock of the corporation shall be paid over to the holders of the bonds, and that the subscription is to be paid in monthly instalments of fixed sums, a subscriber to the bonds under such contract, who has paid three instalments, is a debtor to the corporation for the balance due upon his subscription, in such sort as to be subject to process of garnishment by creditors of the corporation, and liable as garnishee to the extent of such balance due and unpaid upon his subscription for the bonds.

* This case has been overlooked in reporting the former volumes of the Alabama Reports.

APPEAL from the City Court of Montgomery. Tried before the Hon. T. M. ARRINGTON.

The appellants recovered a judgment against the Montgomery Furnace & Chemical Company, on which a garnishment was duly issued and served upon W. F. Joseph. Joseph, the garnishee, had previously subscribed for one thousand dollars of the first mortgage bonds to be issued by the defendant. The provisions of the contract of subscription for said bonds are sufficiently stated in the opinion; and it is the alleged indebtedness due upon this contract of subscription to said bonds, which is sought to be subjected in the present case to the claim of the plaintiffs. The other facts are sufficiently stated in the opinion.

TOMPKINS & TROY, for appellants.—1. Under the garnishee's contract of subscription, he was liable to the creditors of the defendant company, and the fact that he violated the law in his contract, can not shield him from liability to the creditors of the corporation.—2 Morawetz on Corp., §§ 824-5; *Morrow v. Nashville* &c. Co., 10 Am. St. Rep. 658. 2. If the defenses interposed by the garnishee were available to him at any time, he should have claimed them before the corporation became insolvent. *Marshall Foundry Co. v. Killian*, 6 Amer. St. Rep. 539; *Beck v. Henderson*, 76 Ga. 360. 3. Where a subscription is obtained by fraud, the subscriber is estopped from setting this up against a creditor of the corporation, where he has not been diligent in discovering the fraud, or in having his subscription cancelled on discovery of the fraud.—*Upton v. Tribilcock*, 91 U. S. 45; Thompson on Liability of Stock, § 142 *et seq.* Cook on Stock, §§ 163, 210, note 4. 4. A subscriber is estopped, by the subscription of his name in the corporation books, to set up that the corporation, when his subscription was made, had no stock to offer.—*Lathrop v. Kneeland*, 4 Barb. 432. 5. Acts that estop the subscribers as against the corporation, estop them as to corporation creditors.—*Griswold v. Seligman*, 72 Mo. 110.

JONES & FALKNER, *contra.*

COLEMAN, J.—Appellants, having recovered a judgment against the defendant corporation, upon the return

of execution indorsed "No property found," sued out writ
of garnishment against W. F. Joseph. The answer of
garnishee, denying indebtedness, was contested, and
upon the evidence to sustain the contest the court di-
rected the jury to find the issue in favor of the garnishee.
This charge of the court is assigned as error. The re-
covery of the judgment, the issue of execution as above
stated, and the corporate character of the defendant in
execution is admitted. The evidence consists of the tes-
timony of Woolfolk, secretary and treasurer of the de-
fendant corporation, and Exhibits 1, 2, 3. Exhibit No.
3 is a contract or agreement signed by the "Montgomery
Land and Improvement Company," and the "Standard
Charcoal Iron & Chemical Company," and was made in
promotion of the general purpose for which the defend-
ant corporation was intended. The testimony of Wool-
folk, in connection with Exhibits 1 and 2, show that the
terms and stipulations contained in the agreement evi-
denced by Exhibit 3 substantially were accepted and
ratified by the defendant corporation. A corporation
after its organization, has the power to accept and ratify
the agreement and covenant of its promoters, made to
effect and carry out the purposes of its organization,
and, when accepted and ratified, the covenants are mu-
tually binding.—*Wood v. Whelen*, 93 Ill. 155 ; *Reichwald
v. Hotel Co.*, 106 Ill. 439 ; 4 Amer. & Eng. Enc. Law,
202 ; *Canal Co. v. Vallette*, 21 How. 419 ; *Moore & H.
Hardware Co. v. Towers Hardware Co.*, 87 Ala. 206, 6
So. Rep. 41 ; Cook on Stocks, § 707, and note to text.

It is contended that the obligation or subscription of
Joseph was in violation of Article XIV, § 6, of the con-
stitution, and Code, § 1662 ; and under these provisions
of the law, as construed in *Williams v. Evans*, 87 Ala.
726, 6 South. Rep. 702 ; *Tutwiler v. Coal, etc. Co.*, 89 Ala.
399, 7 South. Rep. 398, the subscription is null and
void. The word "bonds," as used in the constitution,
is omitted from section 1662 of the Code, but the same
principles of law apply in either case. If the Montgom-
ery Furnace & Chemical Company was organized with a
capital stock of $400,000, each share of the par value of
$100, whether of this amount the Montgomery Land &
Improvement Company subscribed and received 100
shares or 300 shares, and the Standard Charcoal, Iron &
Chemical Company subscribed for and received 3,900

shares, or 3,691, and 9 shares were subscribed for by other parties in cash, is immaterial upon the question now considered. The evidence shows that all the capital stock of the defendant corporation was subscribed for and paid up in full; that of the Montgomery Land & Improvement Company by a conveyance of property consisting of 30 acres of land, and that of the Standard Charcoal, Iron & Chemical Company by the issue of a license to operate under the H. M. Pierce patents to the extent of 60,000 cords of wood *per annum;* and in consideration of these payments the certificates of stock were issued to them respectively. There is no evidence in the record to show or tending to show either the value of the 30 acres of land or of the Pierce patents, conveyed in payment of the stock; and in the absence of all proof as to the value of the consideration, the court can not say the issue of the stock was fictitious, or in violation of the constitution or section 1662. The stock having been paid for in full, and lawfully issued to the subscribers, they had the right to sell or donate the same, and such sale or gift did not impose any liability upon the grantee or donee.—*Railroad v. Dow*, 120 U. S. 299; 7 Sup. Ct. Rep. 482. "Where stock has been issued to a patentee for the use of his patent he may donate and return a part of this stock back to the corporation, to be sold at a reduced price for the benefit of the corporation, and the transaction will be upheld whether the stock was placed in the hands of a trustee or not."—Cook on Stocks, §§ 42, 43, and note; *Otter v. Petroleum Co.*, 50 Barb. 247. To carry out the purposes for which the Montgomery Furnace & Chemical Company was organized it was necessary to raise a large amount of money, and to effect this it was agreed to "negotiate by subscription, at par, one hundred and seventy-five thousand dollars of first-mortgage bonds," "all of which subscriptions for bonds were to be paid for when called, provided said calls do not exceed ten *per cent. per* month. The Standard Charcoal, Iron & Chemical Company, and the Montgomery Land & Improvement Company, of the shares of stock owned and held by them placed in the hands of a trustee some $200,000, "who was authorized and empowered to issue to each of the subscribers of the first-mortgage bonds above provided for a corresponding amount of stock." The subscription contract of the

garnishee, by which he obligated himself to pay for and take one thousand dollars of first-mortgage bonds, provides "that the entire issue of bonds shall not exceed two hundred thousand dollars ; that they were to be a first lien upon all the property, rights and franchises of the Montgomery Furnace & Chemical Company ; that, upon the payment of the entire amount of any subscription, an equal amount of fully paid-up capital stock shall be issued to the holder." The subscriptions were to be paid in monthly instalments of 10 *per cent.* each. The stock intended for the subscribers to the bonds having been paid for in full by the original subscribers for the stock, and by them placed in the hands of a trustee for the benefit of the corporation, and to be paid over to the subscribers for the bonds when their subscriptions for bonds were paid in full, a failure to pay such subscription for the bonds did not make the subscriber for the bonds liable as for an unpaid subscription for stock. If the capital stock of the company had not been paid for and issued, but remained in the corporation to be issued, and then had been issued as a bonus by the corporation to subscribers for the first-mortgage bonds, or if the bonds were to be or had been issued as a bonus by the corporation to subscribers for the capital stock, in either case, that issued as a bonus would be regarded as a fictitious issue, and in violation of Article XIV, § 6, of the constitution, 87 Ala., 6 South. Rep., and 89 Ala., 7 South. Rep., *supra.* But where, as in this case, according to the evidence, the stock had been fully paid for, and issued, upon a sufficient and adequate consideration, to the subscribers, such holders had the right to return the stock to the company, or to a trustee for the benefit of the company, to be sold or donated, as might be directed by the owner of the stock, without contravening the constitution and laws of the State.—*Christensen v. Eno,* 106 N. Y. 97, 12 N. E. Rep. 648 ; Cook on Stocks, § 42, and note ; *Morrow v. Steel Co.,* (Tenn.) 10 S. W. Rep. 495. It follows from the foregoing principles that the garnishment suit cannot be maintained against Joseph by reason of any supposed statutory liability as a stockholder for any supposed balance due upon subscription for stock.

The sole question, then, is, did Joseph's subscription for $1,000 of first-mortgage bonds create such an obliga-

tion as would give the Montgomery Furnace and Chemical Company the right to coerce payment by a suit at law, and create an indebtedness subject to process of garnishment for any balance due upon his subscription for bonds. *Prima facie*, we hold the corporation had the power to issue the first-mortgage bonds.—*Alabama Gold Life Ins. Co. v. Central A. & M. Ass'n.*, 54 Ala. 73; *Canal Co. v. Vallette*, 21 How. 414; *England v. Dearborn*, 141 Mass. 590, 6 N. E. Rep. 837; 4 Amer. & Eng. Enc. Law, 222, 236, 245. The evidence shows there had been three calls made in pursuance of the provisions of the subscription agreement for the bonds, and three payments made of 10 *per cent.*, each, for the amount of his subscription, leaving a balance due from the garnishee, Joseph, of $700. The obligation to pay for the bonds and to issue the bonds and stock, when paid for, is mutually binding, and may be enforced by either party.— Anson on Cont., *73, and note; 1 Parsons on Cont., *453; 1 Wharton on Cont., § 528, and note; 10 S. W. Rep. *supra*. The first instalment of 10 *per cent.* on the subscription was due within 30 days after organization of the company, and the remaining assessments of 10 *per cent. per* month were payable thereafter upon calls or assessments to be made as the work progressed. The amounts to be paid on the several assessments are as fixed and as certain as if separate notes had been given for such assessments, or as if the liability was for subscriptions to stock payable in instalments. Such a fixed and definite liability may be reached and subjected to process of garnishment.—*Ruse v. Bromberg*, 88 Ala. 627, 7 So. Rep. 384. The garnishee may have a defense to the payment of his subscription for the bonds, but such defense, if any exist, is not disclosed in the record. The jury might have inferred from the evidence that there had been assessments and calls on Joseph for his unpaid subscription, consequently the affirmative charge ought not to have been given.

Reversed and remanded.

CLOPTON, J., not sitting.