THE STATE v. HATHAWAY, *Appellant.*

In Banc, March 20, 1893.

1. **Practice:** NEGATIVE AVERMENT, PROOF OF. Where the subject-matter of a negative averment lies peculiarly within the knowledge of the other party, the averment is taken as true unless disproved by that party.

2. **Criminal Information**: PRACTICING MEDICINE WITHOUT CERTIFI-
CATE: NEGATIVE AVERMENT.  Where a criminal information under
Revised Statutes, 1889, chapter 110, article 1, for practicing med-
icine without having a certificate from the board of health, charges
that the defendant is not within excepted classes created by the act,
the negative averment will be taken as true in the absence of any
evidence to disprove it.

3. **Evidence**: PRACTICE, APPELLATE.  The supreme court will not pre-
sume that a letter not preserved in the record was erroneously admitted
by the trial court.

4. **Constitution**: JUDICIAL POWER: STATE BOARD OF HEALTH: PRACTICE
OF MEDICINE.  Revised Statutes, 1889, chapter 110, article 1, which
vests in the state board of health power to examine not only into the
literary and technical attainments of an applicant for a certificate to
practice medicine, but also into his moral character, does not confer
on the board judicial power within the meaning of the constitution
(art. 3, and art. 6, sec. 1) which provides that judicial power can be
exercised only by the courts of the state.

5. ———: ———.  A judicial duty within the meaning of the constitu-
tion is such a duty as legitimately pertains to an officer in the depart-
ment designated by the constitution as judicial.

6. ———: SPECIAL LEGISLATION: STATE BOARD OF HEALTH: PRACTICE OF
MEDICINE.  The fact that the statute regulating the practice of medi-
cine and surgery (Revised Statutes, 1889, ch. 110, art. 1) excepts from
its operation persons who had been practicing medicine for years
within the state, does not make the act void as class legislation since
the act operates equally on all physicians engaging in the practice
after the act took effect.

*Appeal from Nodaway Circuit Court.*—HON. C. A.
ANTHONY, Judge.

AFFIRMED.

*C. M. Napton* for appellant.

(1) The second instruction given for the state is
erroneous; it told the jury that the defendant must be
found guilty without regard to the negative averments
in the indictment. *State v. Young*, 36 Mo. App. 517.
(2) The letter of August 25th purporting to come
from Dr. Hathaway to Mrs. Rowley was improp-

erly admitted in evidence because no evidence of his handwriting was offered. (3) The act concerning the practice of medicine and surgery passed April 2, 1883, is unconstitutional in so far as it authorizes the prosecution of a physician for practicing without license. Section 8 of the act confers on the board judicial power. *Hall v. Marks*, 34 Ill. 362; *People v. Dental Examiners*, 110 Ill. 180; *Poppen v. Holmes*, 44 Ill. 360; *Ex Parte Garland*, 4 Wall. 333; *State ex rel. v. Gregory*, 83 Mo. 123; *State ex rel. v. State Board*, 103 Mo. 22. (4) If it should be attempted in this state to deprive a practicing lawyer of his license, this could only be done by a court such as the constitution recognizes, and the defendant would have the right to a jury trial. "The right of trial by jury as heretofore enjoyed shall remain inviolate."—Bill of Rights, sec. 28, and "No person shall * * * be deprived of life, liberty or property without due process of law."—Bill of Rights, sec. 30. I maintain that section 8 violates both of those provisions. *Ex Parte Garland*, 4 Wall. 110, 333; Cooley on Constitutional Limitations, ch. 11, pp. 110, 450. (5) The entire act of April 2, 1883, is unconstitutional because of the proviso at the end of section 11. It is as follows: "Provided that the provisions of this act shall not apply to those that have been practicing medicine five years in this state." It was held in New Hampshire that a similar claim vitiated a similar act passed for a similar purpose. *State v. Pennoyer*, 18 Atl. Rep. 878; *State v. Express Co.*, 60 N. H. 219; *McCulloch v. Maryland*, 4 Wheat. 316. The act is partial; it is class legislation; it deprives the citizens of the equal protection of the law. *Missouri v. Lewis*, 101 U. S. 22; *Live Stock Ass'n v. Crescent City Co.*, 1 Abb. 388; *Yick Wo v. Hopkins*, 118 U. S. 356; *In re Parrott*, 6 Sawyer, 349; *Hannibal v. Railroad*, 31 Mo. App. 23; Cooley on Con-

stitutional Limitations, 393; *Bank v. Cooper*, 2 Yerg. 599; *Jones v. Perry*, 10 Yerg. 59.

*John M. Wood*, Attorney General, for respondent.

(1) The information properly charges the offense. Revised Statutes, 1889, secs. 6871, 6872, 6875 and 6881. It is properly verified. Revised Statutes, sec. 4059; *State v. Bennett*, 102 Mo. 356. (2) The *onus* of showing he had a certificate devolved upon defendant. *State v. Edward*, 60 Mo. 490; *State v. Schmidt*, 14 Mo. 137; *State v. Wheat*, 6 Mo. 455; *State v. Hirsch*, 45 Mo. 430; *State v. Harper*, 58 Mo. 530; *State v. Lipscomb*, 52 Mo. 32. (3) Under the ruling in the case of *State v. O'Brien*, 74 Mo. 549, it was not necessary to negative the exceptions relating to students prescribing under the supervision of a preceptor rendering medical sevices gratuitously in cases of emergency, and commissioned surgeons of the United States army or navy or marine hospital. It follows that, in the absence of any evidence tending to bring the case within either of the above exceptions, no error was committed in the giving of instruction number 2 on the part of the state. (4) The letter from Dr. Hathaway to Mrs. Rowley is not contained in the record, and it does not appear whether the admission of it was erroneous and prejudicial. (5) The constitutionality of the act under which this prosecution was instituted was recognized in the cases of *State ex rel. v. Gregory*, 83 Mo. 123; *State ex rel. v. State Board*, 103 Mo. 22. (6) The persons to whom the act was made to apply (and those who were excepted from its provisions) were so circumstanced as to constitute them a class by themselves, and the act is not rendered unconstitutional by reason of the exception. *City v. Weber*, 44 Mo. 547; *State v. Welton*, 55 Mo. 288; *Express Co. v. St. Joseph*, 66 Mo. 681; *St.*

*Louis v. Spiegel,* 16 Mo. App. 210; *St. Louis v. Spiegel,*
75 Mo. 145; *Glasgow v. Rowse,* 43 Mo. 479; *St. Louis
v. Green,* 70 Mo. 562; *St. Louis v. Sternberg,* 69 Mo.
301.

GANTT, J.—This is a proceeding by information
preferred in the circuit court of Nodaway county by the
prosecuting attorney.    It charges that the defendant at
said county, on the first day of October, 1889, did
unlawfully and willfully engage in the practice of med-
icine by publicly professing to be a physician and by
then and there prescribing for one Olive A. Rowley,
without being then and there authorized to practice as
aforesaid by having a certificate as a physician duly
issued to him by the board of health of the state of
Missouri, and without having said certificate recorded
in the county where defendant resided.

The information duly negatived the fact that
defendant had practiced medicine five years prior to
July 1, 1883; and that he was a student prescribing
under a preceptor, or that his medical services were ren-
dered gratuitously in an emergency, or that he was a
surgeon in the United States army or navy or the
marine hospital service.

Defendant moved to quash the information,
because the information was not duly verified; that it
stated no offense and that the law upon which it is
based is unconstitutional.    The motion was overruled
and the cause tried to the court without a jury, the
jury having been waived.

The testimony shows that the defendant was
located at the Linville hotel in the city of Maryville, in
the county of Nodaway, Missouri, in the summer
of 1889, engaged in the practice of medicine.    He had
his professional card or advertisement published in the
Maryville Republican, a newspaper printed and pub-

lished in said city and county, and had an office at the Linville hotel, where he consulted with and prescribed for patients. Mrs. Olive A. Rowley, having seen his advertisement in the paper, and being afflicted with diseased hands, on the twenty-fourth day of August, 1889, in company with her husband, went and called for defendant at said hotel; defendant appeared at the door and was asked by Mr. Rowley if he was Dr. Hathaway; he replied that he was, and asked them into his office; they went in and consulted with defendant with regard to Mrs. Rowley's diseased hands and the treatment they should have. Defendant examined Mrs. Rowley's hands and pronounced the disease eczema. He said he thought he could cure the disease, but it would take some time. Mr. Rowley proposed he would pay him if he succeeded in curing the disease, but the defendant declined the proposition, saying he did not practice in that way; that he had $10 a visit. He then prescribed for Mrs. Rowley's hands— that is, he told them what to do—and said that he would send them some medicine to be used from St. Joseph. Mr. Rowley paid him for this consultation and prescription $10 at this time. On the twenty-fifth or twenty-sixth of August, the medicines were expressed from St. Joseph to Mrs. Rowley. Defendant continued treating Mrs. Rowley's hands until some time in October following.

Defendant did not offer any evidence in the trial.

The court instructed as follows:

"1. The court declares the law to be that the defendant is presumed to be innocent until proved guilty beyond a reasonable doubt; but a doubt to authorize an acquittal must be a substantial doubt of defendant's guilt, and not mere possibility of his innocence.

"2. The court declares the law to be that if it appears from the evidence that the defendant Hathaway

at the county of Nodaway and state of Missouri, on or about the first day of October, 1889, or at any time within one year next before the fifteenth day of March, 1890, did publicly profess to be a physician, and that by reason of his so publicly professing to be a physician, one Olive A. Rowley accepted his services in his professional capacity by calling upon defendant, and defendant prescribed for said Rowley who was then and there a sick person, and that the defendant at the time of so prescribing for said Rowley, had no certificate issued by the board of health of the state of Missouri, the court should find defendant guilty and assess his punishment at a fine of not less than $50 nor more than $500, or by imprisonment in the county jail for not less than thirty days nor more than one year, or by both such fine and imprisonment."

The defendant thereupon asked the court to declare the law of the case as follows, to-wit:

"1. The court declares the law to be, that, under the information and evidence introduced in this case, the court must, sitting as a jury, find the defendant not guilty as charged in said information.

"2. Unless the court, sitting as a jury, shall find beyond a reasonable doubt from the evidence in this case that on the twenty-fourth day of August, 1889, or prior thereto, at the county of Nodaway and state of Missouri, the defendant held himself out publicly to the community, and to Mrs. Olive Rowley, as a physician, and that she on said day applied to him as such physician to treat her for a disease of the hands with which she was then afflicted, and that the defendant did, as such physician, prescribe medicine for the cure of her said disease, then it was not necessary that said defendant should have recorded in the office of the county court of either Buchanan or Nodaway counties, in said state, a certificate from the state board of health, and

the defendant is not guilty as charged in the information in this case.

"3. The court declares the law to be, that unless it appears from the evidence that the defendant, on or prior to the twenty-fourth day of August, 1889, removed from the county of Buchanan to the county of Nodaway, in the state of Missouri, to practice medicine; then in such case the statute makes no provision requiring him to record a certificate issued to him by the board of health of said state in the office of the county clerk in said last named county. Therefore, unless the court, sitting as a jury, shall find from the evidence beyond a reasonable doubt that the defendant did on said twenty-fourth day of August, 1889, in said last named county, without removing from said county of Buchanan, the county of his residence, to said Nodaway county, publicly profess to be a physician, and that he did then and there in said last named county prescribe as a physician for the cure of the disease of the hands of the said Olive Rowley, without having a certificate issued to him by the board of health recorded in the office of the county court of said Buchanan county, then the court will find the defendant not guilty as charged in the information, and it devolves upon the state to prove that the defendant had no such certificate recorded in said county clerk's office in said Buchanan county at said time."

The court refused number 1, gave number 2, as prayed, and modified number 3 so as to make it read as follows:

"3. The court declares the law to be, that unless it appears from the evidence that the defendant on or prior to the twenty-fourth day of August, 1889, removed from the county of Buchanan to the county of Nodaway, in the state of Missouri, to practice medicine, in such case the statute makes no provision requiring him to

record a certificate, issued to him by the board of health of said state, in the office of the county clerk in said last named county. Therefore, unless the court, sitting as a jury, shall find from the evidence beyond a reasonable doubt that the defendant did, on said twenty-fourth day of August, 1889, in said last named county, without removing from said county of Buchanan, the county of his residence, to said Nodaway county, publicly profess to be a physician, and that he did in said last named county prescribe as a physician for the cure of the disease of the hands of the said Olive Rowley without having a certificate issued to him by the board of health, then the court will find the defendant not guilty as charged in the information.''

Whereupon the court sitting as a jury, after hearing the evidence, instructions allowed and given as aforesaid, and the argument of counsel, found the defendant guilty as charged in the information.

In due time motions for new trial and in arrest were filed and overruled, and, a constitutional question appearing in the record, defendant appealed to this court.

I. The sufficiency of the information is no longer questioned save as to the constitutional question, nor is it further contended that if the law is valid the evidence was insufficient to maintain the verdict.

The objection to the second instruction for the state, that it failed to declare defendant was not guilty if he came within the exceptions of the statute, is not tenable. There was not a word of evidence tending to show defendant was a surgeon in the army or navy or the marine hospital service of the United States or that he had practiced his profession prior to July 1, 1883. ''When the subject-matter of a negative averment lies peculiarly within the knowledge of the other party, *the averment is taken as true unless disproved by that party*.''

*State v. Lipscomb*, 52 Mo. 32; *State v. Meek*, 70 Mo. 355; *Moody v. State*, 17 Ohio St. 110. This trial was to the court, and it was wholly unnecessary for the court to declare this presumption to itself, and, had it been to a jury, it would simply have suggested a possible defense to sustain which there is no evidence.

II. The letter of defendant to Mrs. Rowley is not in the record. It devolves upon defendant to show its materiality. In its absence we are not at liberty to presume the court erroneously admitted it. Even if admitted without preliminary proof, it ought to appear to have been prejudicial in its nature.

III. The defendant finally attacks the constitutionality of the act of the legislature, approved April 2, 1883, entitled, "An act to regulate the practice of medicine and surgery in the state of Missouri," and now incorporated in the Revised Statutes of this state, 1889, chapter 110, article 1, on the ground that it discriminates between practitioners of medicine, by conferring special privileges upon certain physicians, exempting them from the obligations and burdens imposed upon others engaged in the same profession, and is therefore class legislation, and, because in contravention of article 3 and section 1 of article 6 of the constitution of Missouri, it confers on the board of health judicial powers which can only be exercised by the courts of this state.

This act has twice before been before this court, in the cases of *State ex rel. v. Gregory*, 83 Mo. 123, and *State ex rel. v. State Board of Health*, 103 Mo. 22. In neither of these cases was the validity of the law challenged as obnoxious to the organic law of the state. The learned and astute counsel for the defendant now seizes upon expressions in those cases upon which to base his argument in part, that section 8, of said act,

now section 6878, Revised Statutes, 1889, confers upon the board judicial powers.

The language of the court in *State ex rel. v. State Board of Health, supra,* is: "This section of the statute imposes upon the board duties which are quasi-judicial in their character.   The question whether the applicant is guilty of unprofessional or dishonorable conduct calls for the exercise of judgment and sound discretion," and in *State ex rel. v. Gregory, supra,* the court said: "Then the board of health, in the discharge of duties in reference to the issuance of certificates, is engaged in the performance of those things which essentially partake of a judicial nature, requiring the examination of evidence and passing on its probative force and effect, requiring the exercise of judgment and the employment of discretion."

But while the constitutionality of the law was not the subject of decision in those cases, still there is nothing in either of them which justifies the charge that this court by its language in those cases recognized that the power conferred upon the board of health in any manner trenched upon that jurisdiction conferred by our constitution upon the judiciary of this state.   This is by no means a new question in this country.

Considering the objection then that this act invests the board of health with judicial powers we think this is a clear misapprehension of this law.   This statute is the exercise by the legislature of its prerogative to pass all needful laws for the preservation of the health of the people of this commonwealth.   Its right to regulate the practice of those trades and professions requiring professional skill and learning can no longer be doubted.   It is an acknowledged part of that undefined power inherent in the state and denominated police power.   The right to require examination and a certain amount of

technical knowledge has been exercised by the several states, not only in the profession of medicine, but in the law and pharmacy, and extends to engineers, pilots and the like and has been sustained in the highest courts of the land.

Prof. Tiedeman in his Limitations of Police Power, section 87 announces the doctrine as follows: "The right of the state to exercise this control over skilled trades and the learned professions, with a single exception in respect to teachers and expounders of religion, has never been seriously questioned. Thus we find in every state statutes which provide for the examination of those who wish to engage in the practice of the law, of medicine and surgery, of pharmacy, and sometimes we find statutes which require all engineers to be examined before they are permitted to take charge of an engine." Judge COOLEY in his work on Torts, pages 289, 290 says: "No one has any right to practice law or medicine except under the regulations the state may prescribe."

The legislature then in the interest of society and to prevent the imposition of quacks, adventurers and charlatans upon the ignorant and credulous has the power to prescribe the qualifications of those whom the state permits to practice medicine. To ascertain whether they come to the standard the state prescribes, it is within the power of the legislature to provide for a board of experts who shall conduct the examinations. All this is within the scope of the legislative branch of the government. And the objection now made that because this law vests in this board the power to examine not only into the literary and technical acquirements of the applicant, but also into his ) oral character, it is a grant of judicial power, is without force.

By the treaty of 1819 between the United States and Spain, the United States bound herself to make satisfaction for any injuries suffered by the Spanish officers and inhabitants in Florida by the operations of the "American army." In pursuance of this article of the treaty congress passed two acts, in 1823 and 1824, directing the judge of the territorial court of Florida to receive, examine and adjudge all cases of claims for losses and report his decisions if favorable to the claimants to the secretary of the treasury, who, if satisfied, should pay them. From an award so made by the district judge an appeal was taken to the supreme court of the United States. The question raised was, whether the district judge in hearing and deciding these claims was exercising a constitutional function within the meaning of the constitution and laws, and had he derived his power from the constitution and laws conferring the judicial power upon the courts, or did he derive it from the treaty and the special acts alone. The supreme court of the United States in *United States v. Ferreira*, 13 How. 48, held that in hearing and deciding said claims it was clear he was not exercising a judicial function within the meaning of that term as applied to the courts. Mr. Chief Justice TANEY in the opinion said, "The powers conferred by these acts of congress upon the judge as well as the secretary are it is true *judicial in their nature*, for judgment and discretion must be exercised by both of them, but it is nothing more than the power ordinarily given by law to a commissioner appointed to adjust claims to lands or money under a treaty. * * * A power of this description may constitutionally be conferred on a secretary as well as on a commissioner. But it is not judicial in either case in the sense in which judicial power is granted by the constitution to the courts of the United States." He

points out that the power given "is not to be exercised in the ordinary forms of a court of justice." "For there is no suit; no parties in the legal acceptance of the term are to be made, no process to issue."

As was said by the supreme court of Indiana in *Wilkins v. State*, 16 N. E. Rep. 192, upon this identical point: "If the appellant were correct in his assumption, then every school examiner who examines an applicant for license, every clerk who accepts and acts upon affidavit, every auditor who accepts an abstract of title when he loans school funds, and every officer who approves a report, would exercise judicial functions. *That they do, in some degree, act judicially, is true,* and so does every officer from the governor to constable, who is invested with discretionary powers;    *    *    * but no one of these officers exercises judicial judgment in the sense that a court or a judge does. These officers, one and all, are ministerial officers and not judges or courts; and the judicial functions meant by the constitution *are such only as courts or judges exercise.*"

A judicial duty within the meaning of the constitution is such a duty as legitimately pertains to an officer in the department designated by the constitution as judicial. And we can but commend in this connection the language of the same court in *Flournoy v. City*, 17 Ind. 169, "An act is none the less ministerial because the person performing it may have to satisfy himself that the state of facts exists under which it is his right and duty to perform the act." This rule is one quite familiar in this state. It is one that governs sheriffs and constables in making levies and has been applied to the secretary of the state in determining the sufficiency of a certificate under the election law. *State ex rel. v. Lesueur*, 103 Mo. 253.

IV. The act then being otherwise a valid exercise of the legislative power, does the provision found in the eleventh section, now section 6881, Revised Statutes, 1889, "that the provisions of this act shall not apply to those persons who have been practicing medicine five years in this state" render it unequal and discriminating between physicians and therefore unconstitutional? This objection has been made so often to statutes identical in principle with ours and has, with one exception, been so uniformly overruled that we forbear any extended discussion of it.

In *People v. Phippin*, 70 Mich. 6, *loc. cit.* 25, the court says in answer to the contention that a similar provision was not founded upon any natural, fair or reasonable distinction, "Now, the legislature saw fit in establishing this test to except from its provisions a certain class of physicians and surgeons. In so doing it in effect declared that the physician or surgeon who had actually practiced medicine continuously for at least five years in this state, and who is practicing when this act shall take effect, was as well qualified, in its judgment, to continue the practice of his profession as the student coming fresh from the halls of college with his diploma was to commence it. The reasons which induced the legislature to insert the exception may have been as varied as the different minds of its members. It certainly had power to insert it. Whether the power was reasonably or unreasonably exercised, or whether it was expedient to enact the law, are questions exclusively within the province of the legislative branch of the state government, and their judgment must necessarily be decisive." *State v. Dent*, 25 W. Va. 1; *Ex parte Spinney*, 10 Nev. 328; *Wert v. Clutter*, 37 Ohio St. 347.

To be obnoxious to the objection that it is class legislation, there must be a discrimination between

persons of the same class. It is evident that the legislature regarded those physicians who had lawfully exercised their profession in this state for five years before the act was passed as belonging to a different class from those who had never practiced in this state and the distinction is one that commends itself to our ideas of justice. The mere fact that the state saw fit to adopt a more rigid rule for the practice of medicine as to those who should hereafter desire to follow that vocation, without applying it to those who had for years followed it, works no injustice to the new applicant. It is a well settled rule that statutes should be construed to act prospectively only, unless the intent of the legislature that they should operate retrospectively is clearly expressed, and so as to admit of no other reasonable constuction, and, giving the act in question this construction, it would apply *from the time of its taking effect to all physicians who might desire to practice in this state, and under this view is certainly not open to the charge of class legislation.* The point is not well taken and must be overruled. The judgment is affirmed. All concur.