THE STATE *ex rel.* FLICKINGER v. FISHER.

In Banc, December 23, 1893.

Jury: EXEMPTION: DENTIST. A dentist who has received a certificate to practice medicine under Revised Statutes, 1889, chapter 110(p. 1612), is not "a person exercising the functions of a * * * practitioner of medicine" and exempt from jury duty under Revised Statutes, 1889, section 6062.

*Mandamus.*

PEREMPTORY WRIT DENIED.

*Selden P. Spencer* for relator.

(1) The relator herein is and has been for twenty years a dentist in lawful and actual practice in the city of St. Louis, Missouri. He has conformed to every requirement of law regarding the practice of dentistry in this state, and has properly pursued every means expressly provided by law to secure the freedom from jury duty to which he claims he is legally entitled. (2) Dentists, or those corresponding to dentists, viz., barber surgeons were excused from jury service at common law. 3 Blackstone's Com. p. 364; 4 *Ibid.* p. 205. (3) The common law rule of exemption remains in force to-day unaffected by any subsequent affirmative statutes which do not expressly repeal it. *King v. Pugh*, 1 Doug. 191. (4) The laws of Missouri applicable to St. Louis expressly exempt from jury duty every man "who is actually exercising the functions of a practitioner of medicine." R. S. 1889, p. 2162. (5) The general laws of the state provide that "no person exercising the functions of a practitioner of medicine * * * shall be compelled to serve on a jury." R. S. 1889, sec. 6062. (6) One does not need to possess the title of M. D. in order to be a practitioner of medicine under the laws of this state. In 37 Mo. App., "practicing medicine" was held to include one who gave electrical baths. In *Bibber v. Simpson*, 59 Me. 181, the services of a clairvoyant were called medical services. (7) Dentists or doctors of dental surgery or doctors of dental medicine, as they are variously called profess publicly to treat the diseases, remedy the injuries, and alleviate the sufferings of the human

body when such disease or injury or suffering is connected with the oral cavity, and thus hold themselves out as physicians, practicing in the specialty of dentistry. (8) Dentists are equally amenable to the law of malpractice as are oculists, aurists, laryngoscopists, or general practitioners. *Simonds v. Henry*, 39 Me. 156. In this case the court speaks of a dentist as a surgeon. *Bogle v. Winslow*, 5 Phil. 136. In this case the court speaks of a dentist as a medical practitioner and "physician." (9) Dentists are called into consultation by general practitioners when diseases of the oral cavity become manifest, as are oculists in regard to the diseases of the eye, or aurists when the ear is affected. *Vide*, the well known case of Hon. Wm. H. Seward, injured while secretary of state, of the United States—jaw bone fractured, general surgery failing—treatment of specialist (dentist) succeeding. (10) The medical schools of the university of Harvard, Pennsylvania, Maryland, Michigan, Iowa, Tennessee, California, etc., have dental departments conferring the degrees of D. D. S. or D. D. M. (11) The position of dentistry as a *branch* of medicine and surgery is sustained by the following case: *Wilkins v. State*, 113 Ind. 513.

*J. L. Bruce* and *W. C. Marshall* for respondent.

(1) The laws of the state of Missouri applicable to St. Louis hold every male citizen, resident of the city, who is sober and intelligent, of good reputation, subject to jury duty, unless he is expressly exempted by the general laws of the state, as provided for in that act; and that act provides that one who is "*actually* exercising the functions of a practitioner of medicine" shall not be compelled to serve on a jury. 2 R. S. 1889, secs. 8 and 9, art. 21, p. 2162. (2) Section 6879 of Revised Statutes, 1889 defines a practitioner of medi-

cine to be one who shall profess publicly to be a physician and to prescribe for the sick, or who shall append to his name the letters "M. D." (3) The relator does not pretend to be an "M. D.;" does not append those letters to his name, but expressly declares that he is a "D. D. S.," and writes his name accordingly. Neither can he profess publicly to be a physician, because a physican is a person who has received a degree of doctor of medicine from an incorporated institution. One who is lawfully engaged in the practice of medicine—Bouvier's Law Dictionary. (4) He can not, under the law, "prescribe for the sick." He has no more right to take charge of a case of cholera, typhoid fever, pneumonia or small pox, than any barber in St. Louis of the present day, because any person "practicing medicine or surgery in any of their departments" must be the holder of a certificate from the state board of health giving him the right to do so. R. S. of 1889, sec. 6871; *State ex rel. v. Gregory*, 83 Mo. 123. (5) Dentist: One who practices dental surgery and mechanical dentistry—Century Dictionary. Formerly dentistry was purely mechanical, but now it has made such progress "as a science that its practitioners claim with much justice to be classed among the learned professions, nevertheless, his calling is mainly mechanical and the tools employed by him in his operations are purely so." *Maxon v. Perrot*, 17 Mich. 337. (6) Dentistry or odontology is extremely limited in the range of its subject-matter, but it affords great opportunities for refinements of technical skill and is given up to be a distinct branch of the profession. 15 Ency. Brit. p. 797. Dentistry is a distinct and limited department of the medical art. *Whitcomb v. Reid*, 31 Miss. 569. (7) The object of the legislature in the enactment of laws regulating the practice of medicine and surgery was the elevation of the standard

of the proficiency of the profession, and accordingly required, as a part of that object those practicing medicine, shall possess the necessary skill and learning, and, as an evidence that they do possess it, must obtain a certificate from the state board of health. This provision is conclusive as to the right to practice. *State ex rel. v. Gregory*, 83 Mo. 123; *Wilkins v. State*, 113 Ind. 513. (8) The jury commissioner is constituted a *quasi* judicial tribunal for hearing claims for exemption, and if any one feels himself aggrieved by his decision an appeal is provided for. *State ex rel. v. Primm*, 50 Mo. 87.

SHERWOOD, J.—In this original proceeding for a *mandamus*, the single question presented is whether the relator, a dentist, and who appends to his name "D. D. S.," is liable to do jury duty under the laws of this state.

Among those exempt under the general laws of this state is a "person exercising the functions of a * * * practitioner of medicine." Revised Statutes, 1889, sec. 6062. Under the provisions of section 8 of article 21 of the scheme and charter, Revised Statutes, 1889, p. 2162, "Every male citizen of this state, resident in such city, sober and intelligent, of good reputation, over twenty-one years of age, and not exempt from jury duty by the general laws of this state, or otherwise disqualified or excused as provided in this act, shall be deemed to be qualified for and subject to the performance of jury duty under the provisions hereof." Section 9 of the same article then proceeds to define who are exempt from jury duty and among them specifies a person who is actually exercising the functions of "a *practitioner of medicine.*"

Of laws *in pari materia* with those mentioned, is

chapter 110, Revised Statutes, 1889, p. 1612. This chapter is entitled, "Medicine, Surgery and Dentistry," and consists of three articles, the first "Medicine and Surgery;" the second, "Disposition of Human Bodies," and the third "Dentistry." These articles were originally separate acts, approved at different times. Laws of 1883, p. 114, approved February 20; *Ibid.* p. 115, approved April 2; and Laws of 1887, p. 215, approved March 31, relating to dead bodies. Those acts, however, like the diversified contents of the great sheet, knit at the four corners, that Peter saw in his vision, have been gathered together in all their incongruity in the present revision, and now form chapter 110.

Section 6871 of article 1 of that chapter provides that "every person practicing medicine and surgery, in any of their departments, shall possess the qualifications required by this article," to-wit: If the applicant is a graduate of medicine, he must present his diploma to the state board of health, etc. And thereupon that board issues its certificate to the applicant, and such diploma and certificate are made conclusive of the right of the holder of the same to practice medicine in this state. Other provisions are inserted in the section with respect to the steps necessary to be taken by those who are not graduates of medicine, but who also desire to practice it, etc. To this end two kinds of certificates are provided to be issued by the board, one for graduates who possess diplomas, and the other for those not graduates who have stood a successful examination before the board as to their qualifications. Without such certificate of one sort or the other, no one can lawfully practice medicine and surgery in any of their departments in this state. *State ex rel v. Gregory,* 83 Mo. 123.

Section 6881, of the same chapter and article, denounces certain penalties against those who shall

practice medicine or surgery in this state without complying with the provisions of this article, to wit: a fine of not less than $50 nor more than $500, or by imprisonment in the county jail not less than thirty nor more than three hundred and sixty-five days, or by both such fine and imprisonment.

Section 6889 of article 3, entitled "Dentistry," makes it unlawful for any person to practice dentistry or dental surgery in this state without being the possessor of a diploma, etc., etc. No provision, however, is made for the presentation of such diploma to the board of health, nor for any examination by that board of the applicant touching his qualifications. The applicant simply presents his diploma to the county clerk or city register, as the case may be, and receives a certificate, which is made "*prima facie* evidence of the right of the holder to *practice under this article.*"

Section 6893 of that article prescribes a penalty for violating the provisions of such article, to wit, by a fine not less than $25, nor more than $200. These different penalties under articles 1 and 3 evidently go to show that the legislature regarded the violation of article 1 by a physician as a more serious offense, and, therefore, to be punished more severely than a violation of article 3 by a dentist. In a word, by those very penalties, they drew a distinction between a *doctor* and a *dentist*.

Relator relies on a certificate obtained under the provisions of article 3 aforesaid, from the city register, on presentation to the latter, by the relator, of his diploma, which certificate, among other things, states that relator's name had been entered on the "Roll of Dental Surgeons," in the city register's office.

Looking at all these statutory provisions bearing on the point in hand, the question mentioned at the

outset recurs to the mind: Do those provisions, or any
of them, exempt relator from the performance of jury
duty? The general laws of this state as already seen,
as well as the provisions of sections 8 and 9 of the
scheme and charter, exempt only certain persons from
the performance of that duty. Has relator brought
himself within any exemption therein contained?

The prevalent rule in construing statutes is, that
the expression of one thing is the exclusion of another.
Anderson's Law Dictionary, *Expressio, etc.* An express
exception, exemption or saving excludes all others.
*Brocket v. Railroad*, 14 Pa. St. 241. And when a
general rule has been established by a statute with
exceptions, the courts will not curtail the former, nor
add to the latter by implication. Sutherland on Stat.
Construc., sec. 328; *Tyson v. Britton*, 6 Tex. 222;
*Roberts v. Yarboro*, 41 Tex. 450; *U. S. v. Dickson*, 15
Pet. 165.

Here, relator claims the force and benefit of a cer-
tain exception which, he asserts, takes his case out of
the operation of the general statute which compels the
performance of jury duty by all male citizens, resident,
etc., etc. In order to avail himself of such exception,
he must show that his case falls strictly within it, since
exceptions, privileges and exemptions are not favored
in the law. And, in this investigation, the familiar
rule laid down by Lord BACON is peculiarly apposite,
"that, as exceptions strengthen the force of a general
law, so enumeration weakens, as to things not enumer-
ated." *Page v. Allen*, 58 Pa. St. 338.

Service on juries is one of the general burdens
imposed upon the male citizens of a state, and all men
who receive the advantages of government are bound
to contribute to its support; and "none can claim
exemption, unless the exemption be so clearly expressed
in the statute as to admit of no other construction."

*Miller v. Kirkpatrick*, 29 Pa. St. 226.  The state has an inherent and indisputable right to the service of all her male citizens as jurors, and, therefore, any statute which strips the government of any portion of its prerogative in this regard, by giving exemption from this general burden, should receive a strict construction. *Academy v. Philadelphia County*, 22 Pa. St. 496.

Here, it can not be successfully claimed that relator finds any exemption in the *terms* of the statute, for certainly he is not a "practitioner of medicine and surgery in any of their departments," as defined in section 6871, nor does he exhibit the qualifications required by that section, to wit, a diploma from a legally chartered medical institution in good standing, and a certificate from the board of health.  His contention, stripped of all verbiage and disguises, and stated baldly and boldly, simply is, that, inasmuch as he possesses a diploma, granted him by a reputable *dental* college, and a certificate of the city register showing the filing of that diploma and the enrollment of his name on the "Roll of Dental Surgeons," that, therefore, he is entitled to the same exemptions from jury service as if, instead of qualifying under the provisions of section 6889, he had actually qualified under those of section 6871.  This contention, for reasons already given, can not prevail; it will not bear a moment's scrutiny.  Either relator is a practitioner of medicine and surgery, or he is not. If not, that determines this litigation against him; if he is such practitioner, then this fact avails him nothing until he complies with the terms and conditions of section 6871 and its associate sections.  The law, by the terms it employs, means a *lawful* "practitioner of medicine," not one who fails to comply with its requirements.  Relator makes no pretense of such compliance.  The statute in question being couched in unambiguous terms, its words are to be taken "in their

plain or ordinary and usual sense.  R. S. 1889, sec. 6570.

Relator evidently feels unsteady on his logical legs if his sole reliance is to be on the statutory exemptions heretofore noted, and so he resorts to the lexicographers, and quotes from the Century Dictionary, where *"Dentist"* is thus defined: "One whose profession it is to clean and extract teeth, repair them when diseased, and replace them when necessary by artificial ones; one who practices dental surgery and mechanical dentistry; a dental surgeon." If relator had delved more deeply into the science of definitions, and had turned another page of the same work, he would have found *"Chiropodist.* One who treats diseases or malformations of the hands or feet; especially a surgeon for the feet, hands and nails; a cutter or extractor of corns and callosities; a corn doctor." So that if relator is exempt from jury duty because, as he says, he *"treats professionally diseases of the oral cavity,"* so, also, is his less pretentious professional brother, who, with equal scientific skill, treats diseases or malformations of the hands or feet, and who is content to be dubbed *"corn doctor."* Certainly the argument and the definition which would support the exemption of the dentist as a "practitioner of medicine and surgery," would also equally support that of his cognate scientist, albeit of humbler professional pretensions.

The disposition of persons to magnify and exalt their callings or occupations has become wonderfully prevalent in these latter days. He who shoves a jack-plane and wields a saw is no longer a *"carpenter,"* but an *"architect and builder;"* the solicitor of orders from our retail merchants is no longer a *"drummer,"* but a *"commercial traveler;"* and the loquacious individual who scrapes your chin is no longer a *"barber,"* but a *"tonsorial artist."*

But this euphemistic style of dressing things in different and more high-sounding verbiage does not alter their essential nature, nor have the least tendency to evade the force and effect of the statutes pointing out those who are subject to jury duty, and those exempt therefrom.

The premises considered, we hold that, on the facts presented in this record, relator is not exempt from jury duty, and hence deny the peremptory writ. BARCLAY, GANTT and BURGESS, JJ., concur; BLACK, C. J., and BRACE and MACFARLANE, JJ., dissent.

BRACE, J. (*dissenting*).—The question for our consideration upon the return in this case is, whether the relator, who is a graduate of a reputable college of dental surgery, duly registered, and engaged in the practice of dentistry and dental surgery in the city of St. Louis, is exempt from jury service under the provisions of section 9, article 21 of the law governing courts in the city of St. Louis, and section 6062 Revised Statutes, 1889, which, upon this subject, are the same in substance. The question turns upon the meaning of the provision that, "No person    *    *    * exercising the functions of    *    *    * practitioner of medicine    *    *    * shall be compelled to serve on any jury."

The subject of the qualifications of jurors and the exemption of certain citizens from jury service has always, in this state, been purely a subject of statutory regulation, the first act having been passed by the territorial legislature in 1808, before the common law of England was introduced into the territory, (1 Territorial Laws, p. 198, sec. 2.), in which "practitioners of physic" were exempted from service on juries. This law was repealed in 1810 and a new one passed by which "all persons exercising the function of practi-

tioner of physic" were exempted. This continued to
be the law until after the admission of the territory
into the union as a state, when, in 1825, a new act
was passed providing that "no person exercising the
functions of a practitioner of physic shall be compelled
to serve on any grand or petit jury." This act was
revised in 1835, in which revision the provision reads,
"No person exercising the functions of a practitioner
of physic shall be compelled to serve on a jury." (R.
S. 1835, p. 343, sec. 9.) In the revision of 1845 it
appears in precisely the same language as in the revis-
ion of 1835. (R. S. 1845, p. 627, sec. 9.) And also
in the revision of 1855, except the word "physic" was
changed to "medicine," and as thus changed the pro-
vision has been carried into every revision since. So
that the law on this subject is not only exclusively
statutory, but is the same as it has always been since
the sovereignty of the state began.

Service upon a jury of the country is a privilege
as well as a duty, and, however regarded by the indi-
vidual in any particular case is, in fact and in law, a
position of honor and trust charged with the gravest
responsibility, from the discharge of the duties of which
no citizen ought to be exempted who is personally fit
for the position, except for the general welfare.
Exemption from jury service is not granted as a per-
sonal favor, but for the public comfort and conven-
ience, and in the light of this reason for its existence,
should the law governing such service be interpreted
and administered.

While the law on this subject and the reason for
its existence remains the same to-day as on the day of
its first enactment, its application now is not so simple
as it was in the beginning, and for many years there-
after. While the early practitioners of medicine in the
state were not necessarily M. D.'s or doctors of medi-

cine in the technical sense of the schools, they were all called doctors, and as such exercised the functions of doctors of medicine, surgeons and dentists, and generally treated indiscriminately all the ailments that human flesh and bone is heir to, whether external or internal, according to the light they possessed; and such continued to be the case down to the memory of the present generation, and doubtless still remains so in many of the rural districts of the state. But in the cities and more populous districts, we find now the functions formerly exercised by the doctor or practitioner of medicine of the olden time, divided up and exercised by specialists, each confining himself generally to the practice of a particular branch or department of the science, such as surgeons, dentists, oculists, aurists, etc.

While dentistry, as an independent calling, may have had an humble and comparatively recent origin, it has now become a very important branch of medical science (address N. S. Davis, M. D., Pres. Am. Med. Ass'n), and there are but few who have arrived at the age of those who are usually called to serve as jurors, who would not testify that when the exercise of its functions becomes necessary, it is as exigent as the exercise of most of the other functions of the general practitioner. The fact that this branch of the medical profession has grown to such proportions as to have its own independent colleges, and to confer its own degrees, and that it has become necessary that its practice should be regulated by statute (2 R. S. 1889, chap. 110, art. 3), indicates the importance of the exercise of its functions to the public welfare. The fact that it is regulated in a separate article and as an independent calling from that of an M. D., does not in any manner affect the character of those functions.

When, in 1874 the legislature first began the regu-

lation of the practice of medicine by general law, they were careful to preserve the exercise of the functions of the old practitioner of medicine to him, by exempting him from the operation of its provisions. (Laws, 1874, p. 111, sec. 3, and 1877, p. 343, sec. 1.) And whatever changes may have been made in the law since on this subject, the question of jury service or exemptions therefrom is not treated therein and they have nothing to do with the question in hand.   The relator under the present law is authorized to exercise all the functions thus recognized that belong to his department óf medicine.  They are now more extensive, more important, and more exigent to the public welfare than they ever were before.   He is within the purview of both the letter and reason of the law that exempts "a practitioner of medicine from jury duty, and should have a peremptory writ commanding his discharge. In these views, BLACK, C. J., and MACFARLANE, J., concur.