PEOPLE *v.* FOURNIER.

1. MUNICIPAL CORPORATIONS—SAGINAW CHARTER—CONSTITUTION.
    Pursuant to the provisions of the charter of the city of Saginaw empowering the common council to make and enforce such ordinances not inconsistent with the State Constitution and statutes as it may deem the public safety and welfare to require, the common council is authorized to enact an ordinance establishing a board of examiners for stationary engineers, and providing for a license fee and certificate of the qualifications of such licensed engineers.

2. CONSTITUTIONAL LAW—LEGISLATIVE FUNCTIONS—DELEGATION.
   Legislative powers are not delegated by an ordinance vest-
   ing a discretion in a board of examiners to determine the
   qualifications of applicants for license as stationary
   engineers.

MCALVAY and OSTRANDER, JJ., dissenting.

Error to Saginaw; Gage, J. Submitted November
15, 1912. (Docket No. 138.) Decided May 28, 1913.

Joseph Fournier was convicted of violating an ordi-
nance of the city of Saginaw providing for the li-
censing of stationary engineers. Affirmed.

*A. Elwood Snow,* for the people.

*Snow & Snow* and *George W. Weadock,* for re-
spondent.

MOORE, J. The following statement of facts is taken
from the brief of counsel for respondent:

"The defendant is the engineer at the plant of
Thomas Jackson & Co., Limited, a manufacturing
establishment, and at the time of the trial had been
so employed for five or six years. He is charged with
violating an ordinance of the city of Saginaw, entitled
'An ordinance to create a board of examiners for sta-
tionary engineers, and to provide for the licensing of
stationary engineers in the city of Saginaw.' The
cause originated in the recorder's court, and, upon
conviction of the defendant, an appeal was taken to
the circuit court. The cause came on for trial, and
after taking the testimony the court instructed the
jury to return a verdict of guilty, which was done.
It is conceded that no engineer's license has been
issued to the defendant, and that he has never pre-
sented himself to the board of examiners or made
application for such license. There is little question
of fact in the record, and the only question involved
is the validity of the ordinance. If the ordinance is
valid, the defendant is guilty as charged in the com-
plaint and warrant. At the conclusion of the proofs
in the cause, counsel for the defendant made the fol-

lowing motion, which briefly sets forth the defendant's contention with reference to this ordinance, viz.:

" 'I move the court to discharge the defendant for the reason that the ordinance under which he has been arrested and sought to be convicted is unconstitutional as being in conflict with the Constitution of the United States, amendments 4, 5 and 14, and in conflict with the Constitution of the State of Michigan, which would be section 26 of article 6—at least that, and perhaps others—because the charter of the city of Saginaw does not grant authority or authorize the ordinance in question; that whatever provision is in it was delegated to a board of examiners, and the common council did not fix the qualifications or conditions under which the applicant was to be examined; that that power was delegated by the common council to the board and is therefore illegal and void; that the ordinance is indefinite, contradictory, and conflicting; that it is unreasonable, tyrannical, and absolutely without any qualification that recommends it as a legal or valid instrument or binding in any way upon this defendant; and, for another reason, which is this, that no ordinance is valid unless it secures or tends to secure the purpose for which it was enacted, and that this ordinance does not do that.' "

If the common council has authority to pass the ordinance, it is under the general welfare clause of its charter, which concludes as follows:

"And in addition to all other powers hereinbefore granted, may make and enforce all such other and further ordinances not inconsistent with the Constitution or the general laws of the State as they shall deem the public safety and welfare of said city to require."

We quote only so much of the ordinance as is essential to an understanding of the case presented:

"Sec. 2. Any person desirous of being employed to take charge of or operate any steam engine or steam boiler or other steam generating apparatus except private dwelling houses and all pressure boilers for heating purposes, operated by a return gravity system, within the corporate limits of the city of Saginaw before taking charge or operating same, shall first apply to said examiners for a blank application which shall have been prepared by said examiners for stationary

engineers; such applicants shall then apply to the said examiners to be examined for a license touching his qualifications for such employment, and if said examiners after having made an examination shall have found said applicant possessed of the necessary qualifications of said employment, they shall give said applicant a certificate to that effect. On presentation of such certificate to the city treasurer and on payment to the city treasurer of two dollars for the first issue of a license, and one dollar for each subsequent issue thereof, and upon payment to the treasurer of this fee said examiners shall issue to said applicant a license authorizing such applicant to take charge and operate a steam engine or steam boiler or horse power, subject to his qualifications for a period of one year: Provided, however, that said examiners shall issue no such license to any applicant who shall not have had at least two years' practical experience in said employment as assistant engineer, oiler or fireman, and provided further, that any person who has been three years or more consecutively employed at any one plant, as an engineer, may apply in writing for a license to said examiners, and upon paying the regular license fee, may obtain a special license authorizing him to operate said steam plant.

"Sec. 3. Any engineer or person desiring to be examined in order to obtain a license for a larger horse power·than his previous license calls for, may do so at any time after the expiration of six months from date of said license, by standing a satisfactory examination and the examiners shall issue to said applicant the license he applies for. It shall be unlawful for any person or persons to take charge of or operate any steam engine, boiler, or other steam generating apparatus, except boilers and engines used in marine service, and locomotive boilers and engines used in transportation and in private dwelling houses, and as herein provided in section two of this ordinance, without having a license to do so as provided in said section two, which license shall be exposed to view in a conspicuous place in the room containing the boiler or engine of which such person is in charge or operating."

Nearly all of the questions involved here were pre-

sented in the case of *City of St. Louis* v. *Manufacturing Co.*, 139 Mo. 560 (41 S. W. 244, 61 Am. St. Rep. 474), where it is said in the opinion:

"Nothing is more common than for the proper men or boards to be appointed whose duty it is to examine applicants for licenses to various avocations or professions, and the fact that some degree of discretion is necessary in order properly to examine the qualifications of the applicants, and to discharge the duties of examiners, has never before been esteemed the delegation of legislative power. Such ordinances and examinations thereunder are in the nature of police functions. In *St. Louis* v. *Knox*, 74 Mo. 79, a similar ordinance was held valid, requiring application for a license for the sale of horses, etc., to be made through the board of police commissioners.

"So, also, in *St. Louis* v. *Weitzel*, 130 Mo. 600 (31 S. W. 1045), a similar ordinance was upheld which required that an applicant to the collector for license to haul garbage should first furnish to such collector a certificate of a certain character from the board of health.

"Nor is it true that in the case at bar the granting or withholding of such license rests in the whim or caprice of the board of engineers, since the ordinance in express terms provides that 'no person possessing such qualifications shall be refused a license.' Even without such provision, if the board of engineers abused its discretion and refused without reason to make the appointment, mandamus would lie to compel it to perform its duty. *St. Louis* v. *Weitzel, supra.*

"Numerous instances occur in our statutes where physicians are required to be examined before being licensed (R. S. 1889, § 6871) ; where lawyers must be examined before obtaining license; dentists (section 6889) ; druggists (section 4614) ; embalmers (Acts 1895, p. 174, § 6).

"In relation to the licensing of dentists, this court recognized the validity of the statute. *State, ex rel. Flickinger,* v. *Fisher,* 119 Mo. 344 (24 S. W. 167, 22 L. R. A. 799).

"With regard to doctors, this court has sustained the legal force and effect of the statute. *State* v. *Hathaway,* 115 Mo. 36 [21 S. W. 1081].

"We take judicial notice of the dangers incident to the operation of steam engines and boilers when in inexperienced and unlicensed hands, and have no doubt as to the power of the city to take such measures as have been taken to provide by ordinances for the public safety. Such ordinances as the aforesaid merely prescribe regulations for the orderly conduct of a very necessary, and, if neglected, a very dangerous business in the large centers of population."

See, also, McQuillin on Municipal Ordinances, p. 653; *McDonald* v. *State,* 81 Ala. 279 (2 South. 829, 60 Am. Rep. 158) ; *In re Alexander,* 167 Mich. 495 (133 N. W. 491).

The conviction and judgment are affirmed, and the case is remanded for further proceedings.

STEERE, C. J., and BROOKE, STONE, and BIRD, JJ., concurred with MOORE, J.

OSTRANDER, J. *(dissenting).* Dissenting from the conclusion reached by Mr. Justice MOORE, I find two reasons why the conviction of respondent should be set aside and he be discharged from custody. There is involved not merely the licensing of one engaged in a business, trade, or profession, the regulation of a business or calling, and the exercise of administrative discretion; there is also involved a determination of the status of a citizen who desires to pursue, as he has done for five or six years, his calling as a stationary engineer. Assuming that the legislature, in the exercise of the police power, may determine the qualifications of one desiring to pursue the calling, it has not exercised the power. It has not delegated its exercise to the common council of the city of Saginaw, in that portion of the charter relied upon by the people, which is the general welfare clause thereof. In other portions of the charter, power to grant licenses is expressly conferred. In no portion of it is there, expressly or by necessary implication, conferred

power to determine the qualifications of stationary engineers, or of any others engaged in professional or mechanical pursuits. This is the first reason. The second reason is that, assuming it has the delegated power to prescribe the qualifications of those engaged in mechanical pursuits or callings, the common council has done no such thing. The local legislation (ordinance) does not purport to fix the qualifications of an engineer. It requires one who wishes to pursue the calling to be examined by a board, and, if the board finds him possessed of the *necessary qualifications*, to so certify. With such a certificate, a license may be procured. The only evidence of fitness prescribed is that the applicant shall have had at least two years' practical experience as assistant engineer. The whole subject of necessary qualifications is confided to the board of examiners. And yet this is the vital thing, the essence of the attempted regulation. I assume that courts may not take judicial notice of what are the necessary qualifications of a stationary engineer, and, if they may not do so, by what standard will a court determine whether such a board of examiners has acted arbitrarily, or fraudulently? By what standard can it be determined whether the regulation is a reasonable one? The citizen must find limitations upon his right to pursue a calling in legislation, which means in some rule or rules established by legislative authority. If the limitation relates to *necessary qualifications*, they should be stated. Those charged with ascertaining whether he measures up to the standard, and he himself, would then have their rights and duties fixed by law, as they should be. The reasonableness of the regulation and the conduct of examiners could then be tested in the courts. It is needless to say that the common council of Saginaw can delegate no legislative power to a board of examiners.

McALVAY, J., concurred with OSTRANDER, J.